UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN PABLO ALBIM and MARICELA MARTINEZ MORAN, on behalf of themselves, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>1656 WIRELESS INC. d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS, 4017 WIRELESS INC. d/b/a TOTAL BY VERIZON a/k/a NY CELL SPOT, INC., f/k/a TOTAL WIRELESS, NY CELL SPOT, INC., NY MOBILAI INC., d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS, GC WIRELESS SOLUTIONS INC., WIRELESS POINT INC., and YARIN NADEL, individually,<br><br>Defendants. | **COMPLAINT**<br><br>Docket No.: 23-cv-1732<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS AND COLLECTIVE ACTION** |

Plaintiffs JUAN PABLO ALBIM and MARICELA MARTINEZ MORAN, (collectively "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly-situated ("FLSA Plaintiffs" and/or "Rule 23 Plaintiffs"), by and through their attorneys, JOSEPH & NORINSBERG, LLC, as and for their Complaint against 1656 WIRELESS INC. d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS, 4017 WIRELESS INC. d/b/a TOTAL BY VERIZON a/k/a NY CELL SPOT INC. f/k/a TOTAL WIRELESS, NY CELL SPOT INC., NY MOBILAI INC., d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS, GC WIRELESS SOLUTIONS INC., WIRELESS POINT INC., (collectively, "Corporate Defendants") and YARIN NADEL ("Nadel") (collectively, "Defendants"), allege upon knowledge as to themselves and their own actions, and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiffs' rights guaranteed to them by: (i) the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a); (ii) the minimum wage provisions of the NYLL, NYLL §§ 198, 652, 12 NYCRR § 142-2.1; (iii) the overtime provisions of the FLSA, 29 U.S.C. § 207(a); (iv) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2; (v) the NYLL's requirement that employees receive one hour's pay at the minimum wage rate for any day in which their spread of hours exceeds ten, NYLL §§ 652, 198, 12 NYCRR § 142-2.4; (vi) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (vii) the NYLL's requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, NYLL § 195(1); and any other claim(s) that can be inferred from the facts set forth herein.

2.      In addition, individual plaintiff JUAN PABLO ALBIM brings this action for damages and equitable relief based on willful violations that the Defendants committed of his rights guaranteed to him by: (viii) the FLSA's prohibitions against retaliation, FLSA § 215 (a)(3); (ix) one of the NYLL's prohibitions against retaliation, NYLL § 215; and for (x) compensatory damages, punitive damages and attorney's fees for violations of his civil rights under New York State law.

2

## PRELIMINARY STATEMENT

3.      During the individual Plaintiffs' employment, defendant NADEL owned and operated between five (5) and six (6) wireless service and cell-phone retail stores located in Queens and Manhattan, operating under various trade names including "Total Wireless," "NY Cell Spot," "Wireless Point," and "GC Wireless solutions."

4.      Defendant NADEL is the owner, operator, and manager of the aforementioned stores, who set Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

5.      Plaintiffs are former employees who worked interchangeably for Defendant NADEL within the various Corporate Defendants' stores.

6.      As described below, Defendants have willfully failed to pay Plaintiffs the wages lawfully due to them under the FLSA and the NYLL.  Specifically, Defendants required Plaintiffs to work, and Plaintiffs did in fact work, well in excess of forty hours during virtually every workweek of their employment.  Defendants willfully misclassified Plaintiffs as independent contractors in direct violation the FLSA, and the NYLL.

7.      Based on this misclassification, Defendants refused to pay Plaintiffs any overtime compensation for any of their hours worked beyond forty in a week in violation of the FLSA and the NYLL. Instead, Defendants paid Plaintiffs fixed weekly salaries - - Nine Hundred Twenty-Four Dollars ($924.00) per week, eventually increasing to One Thousand Two Hundred Dollars ($1,200.00) per week, for Plaintiff JUAN PABLO ALBIM, and Five Hundred Dollars ($500.00) per week for Plaintiff MARICELA MARTINEZ, which by operation of law was solely intended to compensate Plaintiffs for their first forty (40) hours of work each week, meaning that Defendant

paid them nothing for their hours worked over forty (40) each week, in gross violation of the FLSA and the NYLL.

8.      Moreover, if calculated based on their total hours worked, Plaintiff Albim and Moran's regular rates fell below the NYLL's minimum wage rate, and the FLSA's minimum wage rate, respectively, further violating both the FLSA and the NYLL.

9.      Furthermore, Defendants violated the NYLL by failing to provide Plaintiffs with: an additional one hour's pay at the New York minimum wage rate for all days when Plaintiffs' workdays exceeded ten hours from start to finish in violation of the NYLL and NYCRR's spread-of-hours provision, 12 NYCRR § 142-2.4; accurate wage statements on each payday that included, *inter alia*, their actual hours worked and/or their overtime rates of pay, in violation of NYLL § 195(1); and with any wage notice upon hire, let alone an accurate one, in violation of NYLL § 195(1).

10.     Defendants paid and treated all of their employees in the same manner, regardless of job title or job duties and regardless of store location, by uniformly refusing to pay them any overtime compensation when their hours exceeded forty in a week, and by failing to pay them at least at the New York minimum wage rate - - and in some cases the federal minimum wage rate - - for all hours, spread-of-hours pay when their workday exceeded ten hours, wage notices upon hire, and accurate wage statements on each payday.

11.     Plaintiffs therefore bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

12.    Plaintiffs also bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of the Defendant's uniform and systemic violations of the NYLL, NYCRR, and the WTPA.

13.    Plaintiffs assert their claims under the NYLL and NYCRR on behalf of themselves, the putative FRCP 23 class, and any FLSA Plaintiffs who opt-into this action.

14.    Making matters worse, as described below, when Defendant NADEL constructively terminated Plaintiff JUAN PABLO ALBIM by subjecting him to exploitive and illegal pay practices, including demanding he work for three weeks without his owed wages, Defendant NADEL violated the NYLL's provisions against retaliation, as well as Plaintiff JUAN PABLO ALBIM's civil rights guaranteed by the United States Constitution and New York Constitution, by causing him to be falsely arrested, imprisoned, and maliciously prosecuted based on fabricating knowingly false allegations of theft as direct retaliation for Plaintiff JUAN PABLO ALBIM standing up for himself and asserting his rights to be free from wage theft.

## JURISDICTION AND VENUE

15.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

16.    Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the events or omissions giving rise to the claims for relief occurred in this judicial district.

## PARTIES

17.    At all relevant times, Plaintiffs worked for Defendants in New York and were "employees" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR.

18.    Upon information and belief, during Plaintiffs' employment, Defendant NADEL owned and operated between five (5) and six (6) wireless service and cell-phone stores under various and shifting trade names.

19.    Corporate Defendant 1656 WIRELESS INC. d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS is a domestic business corporation organized under the laws of New York, with a principal place of business and address for service of process located at 1656 Broadway, New York, NY 10019.

20.    Corporate Defendant 4017 WIRELESS INC. d/b/a TOTAL BY VERIZON a/k/a NY CELL SPOT INC., f/k/a TOTAL WIRELESS is a domestic business corporation organized under the laws of New York, with a principal place of business and address for service of process located at 4017 Junction Boulevard, Corona, NY 11368.

21.    Corporate Defendant NY CELL SPOT INC., d/b/a TOTAL WIRELESS is a domestic business corporation organized under the laws of New York, with a principal place of business located at 4017 Junction Boulevard, and address for service of process located at 1967 Wehrle Drive, Suite 1 #086, Buffalo, NY 14221.

22.    Corporate Defendant NY CELL SPOT INC., is a domestic business corporation organized under the laws of New York, with a principal place of business located at 103-13 Roosevelt Avenue, Corona, NY 11368, and address for service of process located at 1967 Wehrle Drive, Suite 1 #086, Buffalo, NY 14221.

23.     Corporate Defendant NY MOBILAI INC., d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS is a domestic business corporation organized under the laws of New York, with a principal place of business located at 40-04 Warren Street, Elmhurst, NY 11373, and an address for service of process located at 75-42 198th Street, Fresh Meadows, NY 11366.

24.     Corporate Defendant GC WIRELESS SOLUTIONS INC., is a domestic business corporation organized under the laws of New York, with a principal place of business and address for service of process located at 104-02 Roosevelt Avenue, Corona, NY 11368.

25.     Corporate Defendant WIRELESS POINT INC., is a domestic benefit corporation organized under the law of New York, with a principal place of business and address for service of process located at 91-20B 59th Avenue, Elmhurst, NY 11373.

26.     Defendant NADEL is the executive officer and owner of the Corporate Defendants. In that capacity, Defendant NADEL has and exercises both operational and functional control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. To that end, Defendant NADEL frequently visits and works at each of the Corporate Defendants physical store locations, has and exercises the power to fire and hire employees, supervises and controls employee work schedules and conditions of employment, provides all equipment and materials necessary for employees to perform their jobs, and determines the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class.

27.     At all relevant times herein, Defendants were "employers" within the meaning of the FLSA and NYLL. Additionally, Defendants qualifying annual business exceeds $500,000.00, Defendants employed and employ two or more people, and Defendants were and are engaged in interstate commerce within the meaning of the FLSA, as Defendant offered cell phone plans, cell phones, consumer electronics, and accessories to customers across the United States, accepted

checks and credit card payments as a form of payment based on banking agreements with out-of-state companies, and purchased and used tools and supplies that traveled across state lines on a daily basis in the course of providing its services, the combination of which subjects Defendant to the FLSA's overtime requirements as an enterprise.

28.      At all relevant times, Defendant NADEL operated all of the Corporate Defendants as a single integrated enterprise with a common business purpose. To wit, each of the Corporate Defendants engaged in the related activity of the marketing, sale, and repair of virtually identical inventory, including cellphones, cellphone plans, and cellphone accessories. Moreover, at all relevant times, Defendant NADEL directed and required Plaintiffs to work interchangeably at the various Corporate Defendants, as their staffing and needs required to ensure unified operation of all of Defendant NADELS's businesses. Moreover, Defendant Nadel occasionally advertised the possibility of meager bonus payments to his employees if the Corporate Defendants collectively reached certain daily revenue targets, underscoring the fact that Corporate Defendants operated as a single business. As a result, all of the Corporate Defendants owned by Defendant Nadel were unified in operation, and interdependent on one another.

## COLLECTIVE ACTION ALLEGATIONS

29.      Plaintiffs seek to bring this suit to recover from Defendants unpaid overtime compensation, minimum wages, and liquidated damages pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), on their own behalf, as well as on behalf of those in the following collective:

> Current and former employees of the Corporate Defendants, who, during the applicable FLSA limitations period, performed any work for any of the Defendants, and who consent to file a claim to recover damages for: (1) overtime compensation that is legally due to them; (2) minimum wages that are legally due to them; and/or (3) liquidated damages that are legally due to them ("FLSA Plaintiffs").

30.    Defendants treated Plaintiff MARICELA MARTINEZ MORAN and all FLSA Plaintiffs similarly in that Plaintiff MARICELA MARTINEZ MORAN and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were not paid the minimum wage; (5) were required to work in excess of forty hours in a workweek; and (6) were not paid the required one and one-half times their respective regular rates of pay, or one and one-half the minimum wage rate if greater, for all hours worked per workweek in excess of forty.

31.    At all relevant times, Defendants are and have been aware of the requirements to pay Plaintiffs and all FLSA Plaintiffs at an amount equal to Seven Dollars and Twenty-Five Cents per hour ($7.25), yet they purposefully and willfully chose not to do so.

32.    Moreover, Defendant NADEL underscored his knowing and willful violation of the FLSA by explaining to Plaintiff MARICELA MARTINEZ MORAN upon her hire that he never pays his employees for their first week of work.

33.    Defendants' disregard for the FLSA's requirements is further highlighted by the fact that Defendant NADEL was recently sued by another former employee for many of the same FLSA violations alleged herein, including failure to pay overtime wages. *See Perez v. 4017 Wireless Inc., et al.,* 1:21-cv-06927 (E.D.N.Y.).  Defendant NADEL settled that case, yet still refuses to conform his pay practices to the requirements of the FLSA.

34.    The precise number of FLSA Plaintiffs should be readily available from a review of the Defendants' personnel, scheduling, time, and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

35.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

36.     In addition, Plaintiffs seek to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on their own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, were subjected to violations of the NYLL and FLSA.

37.     Plaintiffs seek certification of the following FRCP 23 class:

> Current and former employees of Corporate Defendants who performed any work for Corporate Defendants during the statutory period within the state of New York ("Rule 23 Plaintiffs").

38.     All of the requirements under FRCP(b)(3) are satisfied, as set forth below.

## Numerosity & Ascertainability

39.     During the applicable NYLL limitations period, the Defendants have, in total, employed at least 40 employees that are putative members of this class.

40.     The precise number of Rule 23 Plaintiffs is readily ascertainable through a review of Defendants' personnel, time, and payroll records.

## Common Questions of Law and/or Fact

41.     There are questions of law and fact common to each Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that the Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether the Defendants compensated Rule 23 Plaintiffs with overtime pay at their regular rates of pay or at time and one-half their regular rates of pay for all hours worked over forty in a week; (4)

whether the Defendants compensated Rule 23 Plaintiffs for all hours of work and whether they did so by paying them at least at the NYLL statutory minimum wage rate; (5) whether the Defendants compensated Rule 23 Plaintiffs for an additional one-hour's pay at the New York minimum wage rate whenever their workdays exceeded ten hours from start to finish; (6) whether the Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by the NYLL; (7) whether the Defendants kept and maintained accurate records of hours worked by Rule 23 Plaintiffs; (8) whether the Defendants kept and maintained records with respect to the compensation that it paid to the Rule 23 Plaintiffs for each hour worked; (9) whether the Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (10) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL; and (11) if so, what constitutes the proper measure of damages.

**Typicality of Claims and/or Defenses**

42.     As described in the "Background Facts" section below, the Defendants employed Plaintiffs and Rule 23 Plaintiffs within the meaning of the NYLL. Plaintiffs' claims are typical of the claims of the Rule 23 Plaintiffs whom they seek to represent, as the Rule 23 Plaintiffs: work and/or have worked for Defendants as employees interchangeably assigned to the Corporate Defendants stores owned by Defendant NADEL in New York; Defendants failed to pay them time and one-half their regular rates of pay for all hours worked beyond forty in a week; Defendants failed to pay them at least at the New York statutory minimum wage rate for all hours; Defendants failed to provide them with spread-of-hours pay when their workday exceeded ten hours from start to finish; and Defendants did not provide them with accurate wage statements on each pay day, or with an accurate wage notice upon hire. Plaintiffs and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL to be paid overtime wages whenever their workweeks exceeded

forty in a week, to be paid at the minimum wage rate, to receive spread-of-hours pay when their workday exceeds ten hours, and to be furnished with accurate wage statements on each payday and an accurate wage notice upon hire.

<u>**Adequacy**</u>

43.    Plaintiffs as described below, performed the same or similar job duties as the Rule 23 Plaintiffs throughout their employment with Defendants.  Defendants did not pay Plaintiffs time and one-half their regular rate of pay for all hours worked over forty in a week, instead choosing to pay them static weekly rates for all hours. Defendants also failed to furnish Plaintiffs with accurate wage statements on each payday. This is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.

44.    Plaintiffs fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer.  Thus, Plaintiffs would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

45.    Additionally, Plaintiffs' counsel, Joseph & Norinsberg, LLC ("J&N"), has substantial experience in the field of employment law.  J&N is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hour, discrimination, and harassment claims among others.  J&N is dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk. Plaintiff's counsel has handled hundreds of employment cases in federal districts courts, including dozens of Rule 23 class actions and FLSA collective actions.  Accordingly, Plaintiffs' counsel will fairly and

adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

### Superiority

46.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

47.     Plaintiffs have no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, with respect to the subject wage and hour claims, the Defendants treated Plaintiffs identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

48.     Any lawsuit brought by any other employee based in New York and employed by Defendants would be identical to a suit brought by any other such employee for the same violations.  Thus, separate litigation would risk inconsistent results.

49.     Accordingly, this class action is superior to any other method for protecting Rule 23 Plaintiffs' rights, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## BACKGROUND FACTS

### Juan Pablo Albim

50.     On or around August 3, 2020, Defendant NADEL hired Plaintiff JUAN PABLO ALBIM to work as a "store manager" responsible for the day-to-day operations within Defendants' retail locations (the Corporate Defendants).

### *Defendants Misclassify Plaintiff Albim as an Independent Contractor and "Manager"*

51.     Despite his title, Plaintiff JUAN PABLO ALBIM was a "manager" in name only, as his primary job duties involved selling merchandise and dealing with customers at Defendants' various retail stores.

52.     When Defendants hired Plaintiff in August 2020, Defendant YARIN NADEL forced Plaintiff, under threat of termination, to sign an IRS Form W-9, classifying him as an independent contractor. During the entirety of his employment, Plaintiff never received an IRS Form 1099 from Defendants, nor did Plaintiff ever receive a wage statement of any kind.

53.     That is, Defendants willfully misclassified Plaintiff as an independent contractor, despite exercising complete control over the terms and condition of Plaintiff's employment, in an attempt to unlawfully avoid paying him overtime compensation, minimum wages, and to circumvent the other FLSA, NYLL and NYCRR statutory and regulatory requirements described herein.

54.     Underscoring Plaintiff's status as an employee and not an independent contractor, Defendant Nadel never allowed Plaintiff to negotiate his salary, denied Plaintiff the right to refuse any task assigned to him under threat of termination, and required Plaintiff to wear a company uniform.

55.     Plaintiff JUAN PABLO ALBIM had no independent discretion of any kind with respect to the management and operation of Defendants stores. Defendant NADEL dictated virtually every aspect of Plaintiff's work including the hours Plaintiff worked, the locations of Plaintiff's work, and the manner of performing Plaintiff's work.

56.     The control exercised by Defendant NADEL was so complete that he even denied Plaintiff the right to take meal breaks.

57.     Defendant NADEL regularly required Plaintiff to travel between the Corporate Defendants different store locations, where Plaintiff performed a wide variety of retail functions.

58.     Although Plaintiff's nominal "primary" store was Corporate Defendant NY CELL SPOT INC., located at 103-13 Roosevelt Avenue, Corona, NY, he was also regularly assigned by Defendant  NADEL to work at Corporate Defendant 4017 WIRELESS INC., located at 40-17 Junction Boulevard, in Corona, NY, as well as at Corporate Defendant GC WIRELESS SOLUTIONS INC., located at 104-02 Roosevelt Avenue, Corona, NY as many as four (4) times per week.

59.     On multiple occasions, as staffing needs required, Defendant NADEL assigned Plaintiff to work at Corporate Defendant NY MOBILAI INC., d/b/a TOTAL BY VERIZON f/k/a TOTAL WIRELESS, located at 40-04 Warren Street, Elmhurst, NY.

60.     During the month of January 2022, defendant NADEL assigned Plaintiff to work at Corporate Defendant WIRELESS POINT INC., located at 91-20B 59th Avenue, in Elmhurst, NY.

61.     For the last full month of his employment, Plaintiff worked at Corporate Defendant 1656 WIRELESS INC., located at 1656 Broadway, New York, NY.

62.     Defendants required Plaintiff to work, and Plaintiff did in fact work, an average of seventy-five (75) hours per week, and at times as many as ninety-three and one-half (93.5) hours per week.

63.     For the first four (4) months of his employment, Defendants required Plaintiff to work seven (7) days per week, between the hours of 10:30 a.m. and 9:30 p.m., without a lunch break, for an average of seventy-seven (77) hours per week.

64.     Beginning in December 2020, and continuing through January 2022, Defendants required Plaintiff to work seven (7) days per week, from 10:00 a.m. until at least 10:30 p.m., with no lunch break, with one day off every two (2) weeks, for an average of either eighty-seven and one-half (87.5) hours or seventy-five (75) hours each week.

65.     However, between June 7, 2021, and October 31, 2021, Defendants required Plaintiff to work even more hours on weekends, extending his shift on Fridays, Saturdays and Sundays to 10:00 a.m. until 12:30 a.m., still without a lunch break, for an average of either ninety-three and one-half (93.5) hours or eighty-one (81) hours each week.

66.     Beginning in January 2022, Defendants required JUAN PABLO ALBIM to work six (6) days per week, between 10:30 a.m. and 11:00 p.m., still without a lunch break, with a day-off usually falling on Tuesday, for an average of seventy-five (75) hours per week.

### *Defendants' Pay Practices Violated the FLSA and NYLL*

67.     Defendant NADEL never paid Plaintiff any wages at all for his first week of work. This was consistent with how Defendant NADEL treated all of his employees, in keeping with his illegal policy of depriving his employees their first week's pay.

68.     From the second week of his employment until the end of June 7, 2021, Defendants paid Plaintiff JUAN PABLO ALBIM a flat salary of Nine Hundred Twenty-Four Dollars ($924.00) per week.

69.     Beginning on or around June 7, 2021, and continuing until Defendants constructively terminated his employment in June 2022, Defendants paid Plaintiff a flat salary of One Thousand Two Hundred Dollars ($1,200.00) per week.

70.     Defendants paid Plaintiff at the end of each week in cash.

71.     For much of Plaintiff's employment, Defendants failed to compensate Plaintiff with the statutorily mandated minimum wage of Fifteen Dollars ($15.00) per hour for his first forty (40) hours worked per week.

72.     Moreover, for the entirety of Plaintiff's employment, Defendants failed to pay Plaintiff his statutorily mandated overtime compensation of one and one-half times the minimum wage for any hours worked over forty (40).

73.     By way of example only, during the week of June 13, 2021 through June 19, 2021, Plaintiff JUAN PABLO ALBIM worked the following schedule for a total of ninety-three and one-half (93.5) hours of work:

|   |   |   |
|---|---|---|
| a. | Sunday, June 13, 2021: | 10:00 a.m. through 12:30 a.m. |
| b. | Monday, June 14, 2021: | 10:00 a.m. through 10:30 p.m. |
| c. | Tuesday, June 15, 2021: | 10:00 a.m. through 10:30 p.m. |
| d. | Wednesday, June 16, 2021: | 10:00 a.m. through 10:30 p.m. |
| e. | Thursday, June 17, 2021: | 10:00 a.m. through 10:30 p.m. |
| f. | Friday, June 18, 2021: | 10:00 a.m. through 12:30 a.m. |
| g. | Saturday, June 19, 2021: | 10:00 a.m. through 12:30 a.m. |

For his work this week, Defendants paid Plaintiff JUAN PABLO ALBIM his flat salary of One Thousand Two Hundred Dollars ($1,200.00). Defendants failed to pay Plaintiff JUAN PABLO ALBIM at least the New York minimum wage rate of Fifteen Dollars ($15.00) per hour for each hour worked this week, instead only paying him the equivalent of Eleven Dollars Eighty-Two Cents ($11.82) per hour. Nor did Defendants pay Plaintiff JUAN PABLO ALBIM one and one-half times the minimum wage for his sixty-one and one-half (61.5) hours of overtime this week, as mandated by the FLSA and NYLL.

74.    Moreover, despite routinely requiring Plaintiff to work shifts in excess of ten hours in a workday from start to finish, including during seven days in the above-described example week, and despite paying Plaintiff at rates that were below the New York minimum wage rate, Defendants never provided Plaintiff JUAN PABLO ALBIM with one additional hour's pay at the New York minimum wage rate pursuant to the NYLL's and NYCRR's spread-of-hours provisions.

75.    Additionally, Defendant did not provide Plaintiff with any wage notice at the time of his hire, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether they would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including meal allowances; the regular payday designated by Defendants in accordance with the NYLL; the corporate name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office(s) or principal place(s) of business, and a mailing address if different; and Defendants' telephone number(s).

76.    On each occasion when Defendants paid Plaintiff, Defendants failed to provide him with any wage statements, let alone one that accurately listed, *inter alia*, Defendants' corporate and/or "doing business as" name(s), Plaintiff's actual hours worked, and Plaintiff's owed overtime

rates. Defendants acted in the manner described herein so as to minimize their overhead while maximizing profits.

77.    Plaintiff relied on the information provided to him by Defendants - - namely, that his salary was legally sufficient to pay him for his hours worked without violating the law. As a result, he did not become aware that Defendants were underpaying him each week by failing to pay him at least at the statutory minimum wage rate, and by failing to pay him any overtime compensation.

78.    If Defendants issued Plaintiff with paystubs that accurately reflected his actual hours worked and his actual pay rate, Plaintiff would have been able to ascertain the extent of Defendants' underpayment, which would have enabled him to complain about Defendants' failure to timely pay him all of his owed wages, as demonstrated by Plaintiff's protest when Defendants failed to pay him any wages during the last three weeks of his employment.

79.    But rather, because Defendants completely failed to issue him any paystubs, and because Defendants disseminated to Plaintiff an inaccurate statement at the start of his employment - - namely, an IRS Form W-9 suggesting that he was an independent contractor, not an employee, and therefore not entitled to receive minimum wages or overtime - - Plaintiff suffered the consequences of underpayment.

80.    Moreover, he was deprived of the information necessary to enable him to advocate on his own behalf to demand payment of the wages he was lawfully due for the time he had spent working at Defendants' various retail store locations.

***Defendants Retaliated against Plaintiff in Violation of the FLSA and NYLL***

81.    In the three weeks preceding June 16, 2022, Defendant NADEL entirely failed to pay Plaintiff JUAN PABLO ALBIM any wages whatsoever.

82.     When Plaintiff complained about his lack of pay, Defendant NADEL became irate, and berated Plaintiff. Defendant NADEL made it clear in this conversation that he expected Plaintiff to continue to work, and that a condition of Plaintiff's continued employment was accepting that pay may arrive weeks late.  Confronted with Defendants' increasingly illegal and intolerable pay practices, Plaintiff could not remain employed by Defendants, as no reasonable employee would agree to work without pay.

83.     Defendant NADEL's demand that Plaintiff continue to work without being paid for three consecutive weeks amounted to Plaintiff's constructive termination, as Plaintiff simply could not continue to work for free.

84.     In response to Defendant NADEL's outburst and refusal to pay his owed wages, Plaintiff immediately gave Defendant NADEL notice that he would not tolerate such treatment, and planned to resign, whereupon Defendant NADEL pleaded with Plaintiff not to leave. Plaintiff, unable to continue to work under the intolerable economic realities dictated by Defendant NADEL, refused to reconsider.

85.     Plaintiff's refusal to work for free further enraged Defendant NADEL. In response, Defendant NADEL baselessly accused Plaintiff of stealing money from the cash register, as well as stealing two (2) scooters from the store.

86.     Insulted by Defendant NADEL's outrageous and false accusations, Plaintiff left Corporate Defendant 1656 WIRELESS INC., on June 16, 2022.

87.     Upon his departure, Defendant NADEL knowingly made a false complaint to the NYPD instigating a false arrest and subsequent malicious prosecution against Plaintiff JUAN PABLO ALBIM.

88.     Specifically, defendant NADEL called the police and falsely reported to them that Plaintiff stole two scooters plus more than Fifty Thousand Dollars ($50,000.00) from a cash register.

89.     To corroborate these patently false allegations, Defendant NADEL provided the NYPD, and the New York County District Attorney's office, with surveillance footage depicting Plaintiff opening a cash register.

90.     Defendant NADEL had expressly authorized Plaintiff to open the cash register either to pay fellow employees using this money as directed by Defendant NADEL, or to collect his own pay, as directed by Defendant NADEL.

91.     But Defendant NADEL concealed this exculpatory information from the authorities, instead providing them with a knowingly false statement claiming that Plaintiff had stolen the funds depicted in the surveillance footage.

92.     Defendant NADEL also forwarded to the NYPD and New York County District Attorney's office video footage depicting Plaintiff testing out two scooters upon their arrival before putting them on sale. Defendant NADEL again brazenly and maliciously misrepresented the content of these videos to the investigating authorities as evidence of crimes he completely fabricated, in direct retaliation for Plaintiff's complaint about not receiving his owed wages.

93.     Based *solely* on YARIN NADEL's lies and knowingly false allegations, on July 30, 2022, NYPD officers arrested Plaintiff at his home, handcuffed him, and transported Plaintiff to an NYPD precinct in Midtown Manhattan where police detained Plaintiff for hours before releasing him with a Desk Appearance Ticket.

94.     Plaintiff retained two separate criminal defense attorneys in order to defend himself against the baseless criminal charges against him, causing him to incur substantial out-of-pocket legal expenses in excess of $2,000.00 to secure his own defense.

95.     The meritless charges against Plaintiff were dismissed in their entirety by the Manhattan District Attorney's Office on September 21, 2022.

96.     Defendant NADEL's malicious retaliation against Plaintiff is consistent with Defendant NADEL's treatment of the staff within all of the Corporate Defendants' stores.

97.     That is, throughout his employment, Plaintiff observed Defendant NADEL threaten other employees who questioned Defendant NADEL's authority or his pay practices, including by threatening deportation or criminal prosecution, in direct violation of, *inter alia*, NYLL § 215.

98.     Based on the foregoing, Plaintiff suffered a great deal of personal, emotional, reputational, and economic damages as a result defendant NADEL's malicious and false allegations.

**Maricela Martinez Moran**

99.     On or around February 1, 2022 Defendants hired plaintiff MARICELA MARTINEZ MORAN to work as a "store manager" responsible for the day-to-day operations within all of Defendants' retail locations.

***Defendants Misclassify Plaintiff Moran as an Independent Contractor and a "Manager"***

100.    Despite her title, like Plaintiff Albim, Plaintiff MARICELA MARTINEZ MORAN was a "manager" in name only, as her primary job duties involved selling merchandise and dealing with customers at Defendants' various retail stores.

101.    During the entirety of her employment, Plaintiff never received an IRS Form 1099 from Defendants, nor did Plaintiff ever receive a wage statement of any kind.

102.    That is, Defendants willfully misclassified Plaintiff as an independent contractor despite exercising complete control over the terms and condition of Plaintiff's employment, in an attempt to unlawfully avoid paying her overtime compensation, minimum wages, and to circumvent the other NYLL and NYCRR statutory and regulatory requirements described herein.

103.    Underscoring Plaintiff's status as an employee and not an independent contractor, Defendant Nadel never allowed Plaintiff to negotiate her salary, denied Plaintiff the right to refuse any task assigned to her under threat of termination, denied Plaintiff lunch breaks, and required Plaintiff to wear a company uniform.

104.    Plaintiff MARICELA MARTINEZ MORAN had no independent discretion of any kind with respect to the management and operation of Defendants' stores. Defendant NADEL dictated virtually every aspect of Plaintiff's work including the hours Plaintiff worked, the locations of Plaintiff's work, and the manner of Plaintiff's work.

105.    To highlight the level of control and direction Defendant NADEL exercised over Plaintiff, during one week of her employment, Defendant NADEL required Plaintiff not to report to work at the Corporate Defendants' retail store, but to instead babysit Defendant NADEL's children in his personal home.

106.    Defendants regularly required Plaintiff to travel between the Corporate Defendants, where Plaintiff performed a wide variety of retail functions. Specifically, Plaintiff MARICELA MARTINEZ MORAN rotated to whichever Corporate Defendant needed staffing coverage on a given day. As a result, during her tenure, defendant NADEL directed Plaintiff to work at Corporate Defendant 4017 WIRELESS INC., located at 40-17 Junction Boulevard, Corona, NY; NY CELL SPOT INC., located at 103-13 Roosevelt Avenue, Corona, NY; GC WIRELESS SOLUTIONS

INC., located at 104-02 Roosevelt Avenue, Corona, NY; and Corporate Defendant NY MOBILAI

INC., located at 40-04 Warren Street, Elmhurst, NY.

107.    Pursuant to the terms of her employment, Defendants required Plaintiff to work an

average of seventy-two (72) hours per week.

108.    Typically, MARICELLA MARTINEZ MORAN worked six (6) days per week

between the hours of 10:0 a.m. and 10:00 p.m., with no lunch break, for an average of seventy-

two (72) hours per week.

### *Defendants' Pay Practices Violated the FLSA and NYLL*

109.    Defendant YARIN NADEL never paid MARICELA MARTINEZ MORAN for her

first week of work, in keeping with his illegal policy of depriving his employees their first week's

pay.

110.    Between February 8, 2022, and March 31, 2022, Defendants paid Plaintiff a flat

salary of Five Hundred Dollars ($500.00) per week.

111.    Aside from her first week of work, Defendants paid Plaintiff at the end of each

week in cash.

112.    For the entirety of Plaintiff's employment, Defendants never compensated Plaintiff

with the federal mandated minimum wage of $7.25 per hour for her first forty (40) hours worked

per week, and nor did Defendants pay Plaintiff her statutorily mandated overtime compensation of

one and one-half times the minimum wage.

113.    By way of example only, during the week of February 6, 2022, through February

12, 2022, Plaintiff MARICELA MARTINEZ MORAN worked the following schedule for a total

of Seventy-Two (72) hours:

| | | |
|---|---|---|
| a. | Sunday, February 6, 2022: | 10:00 a.m. through 10:00 p.m. |
| b. | Monday, February 7, 2022: | 10:00 a.m. through 10:00 p.m. |
| c. | Tuesday, February 8, 2022: | 10:00 a.m. through 10:00 p.m. |
| d. | Wednesday, February 9, 2022: | OFF |
| e. | Thursday, February 10, 2022: | 10:00 a.m. through 10:00 p.m. |
| f. | Friday, February 11, 2022: | 10:00 a.m. through 10:00 p.m. |
| g. | Saturday, February 12, 2022: | 10:00 a.m. through 10:00 p.m. |

For this week, Defendants paid Plaintiff MARICELA MARTINEZ MORAN her flat salary of Five Hundred Dollars ($500.00). Defendants failed to pay Plaintiff MARICELA MARTINEZ MORAN at least the FLSA minimum wage rate of Seven Dollars Twenty-Five Cents ($7.25) per hour, and fell far short of the New York minimum wage rate of Fifteen Dollars ($15.00) per hour, instead only paying her the equivalent of Six Dollars Ninety-Four Cents ($6.94) per hour. Nor did Defendants pay Plaintiff MARICELA MARTINEZ MORAN one and one-half times the minimum wage for her thirty-two (32) hours of overtime worked this week, as mandated by the FLSA and NYLL.

114.    Despite routinely requiring Plaintiff to work shifts in excess of ten hours in a workday from start to finish such as six times in the above-described example week, and despite paying Plaintiff at rates that were below the New York minimum wage rate, Defendants never provided Plaintiff with one additional hour's pay at the New York minimum wage rate pursuant to the NYLL's and NYCRR's spread-of-hours provisions.

115.    Additionally, Defendant did not provide Plaintiff with any wage notice at the time of her hire, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether they would be paid by the hour, salary, or in another manner; allowances,

if any, claimed as part of the minimum wage, including meal allowances; the regular payday designated by Defendants in accordance with the NYLL; the corporate name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office(s) or principal place(s) of business, and a mailing address if different; and Defendants' telephone number(s).

116.    On each occasion when Defendants paid Plaintiff, Defendants failed to provide her with any wage statements, let alone one that accurately listed, *inter alia*, Defendants' corporate and/or "doing business as" name(s), Plaintiff's actual hours worked, and Plaintiff's owed overtime rates.

117.    Additionally, Defendants did not provide Plaintiff with any wage notice at the time of her hire, let alone one that accurately contained, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether they would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including meal allowances; the regular payday designated by Defendants in accordance with the NYLL; the corporate name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office(s) or principal place(s) of business, and a mailing address if different; and Defendants' telephone number(s).

118.    Plaintiff relied on the information provided to her by Defendants - - namely, that her salary was legally sufficient to pay her for her hours worked without violating the law. As a result, she did not become aware that Defendants were underpaying her each week by failing to pay her at least at the statutory minimum wage rate, and by failing to pay her any overtime compensation.

119.     If Defendants issued Plaintiff with paystubs that accurately reflected her actual hours worked and her actual pay rate, Plaintiff would have been able to ascertain the extent of Defendants' underpayment, which would have enabled her to complain about Defendants' failure to timely pay her all of her owed wages.

120.     But rather, because Defendants completely failed to issue her any paystubs, and because Defendants disseminated to Plaintiff an inaccurate statement at the start of her employment - - namely, an IRS Form W-9 suggesting that she was an independent contractor, not an employee, and therefore not entitled to receive minimum wages or overtime - - Plaintiff suffered the consequences of underpayment.

121.     Moreover, Plaintiff was deprived of the information necessary to enable her to advocate on her own behalf to demand payment of the wages she was lawfully due for the time she had spent working at Defendants' various retail store locations.

122.     Each hour that Plaintiffs worked was for Defendants' benefit.

123.     Defendants acted in the manner describe herein so as to minimize their overhead while maximizing profits.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Minimum Wage in Violation of the FLSA for Plaintiff MARICELA MARTINEZ MORAN and FLSA Plaintiffs*

124.     Plaintiff MARICELA MARTINEZ MORAN and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

125.     29 U.S.C. § 206(a) requires employers to compensate their employees who in any workweek are engaged in commerce at a rate not less than Seven Dollars Twenty-Five Cents ($7.25) per hour.

126.    As described above, Defendants are "employers" within the meaning of the FLSA, while Plaintiffs and FLSA Plaintiffs are "employees" within the meaning of the FLSA.

127.    As described above, by paying Plaintiff MARICELA MARTINEZ MORAN and any FLSA Plaintiff who opts-into this action a weekly salary that fell below the statutory minimum wage rate of $7.25 for all hours worked, Defendants willfully violated the FLSA's minimum wage provision.

128.    Specifically, Defendants paid Plaintiff MARICELA MARTINEZ MORAN a weekly salary of Five Hundred Dollars and Zero Cents ($500.00) for all hours she worked each week, which regularly exceeded seventy (70), bringing her average hourly rate below the FLSA mandated Seven Dollars and Twenty-Five Cents ($7.25) per hour, i.e., Six Dollars and Ninety-Four Cents ($6.94) per hour.

129.    Plaintiff MARICELA MARTINEZ MORAN and any FLSA Plaintiff who opts-into this action are entitled to recover the amount of unpaid minimum wages Defendants owe them for all hours worked.

130.    Plaintiff MARICELA MARTINEZ MORAN and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants violation of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Pay Minimum Wages in Violation of the NYLL*

131.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

132.    N.Y. Lab. Law § 652(1) prescribes a minimum wage that employers must pay to their employees for each hour worked.

133.    As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL.

134.    As also described above, Defendants did not compensate Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action at the minimum hourly rate required by the NYLL for all hours worked.

135.    At the least, Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are entitled to payment at the minimum wage for every hour worked for Defendants pursuant to the NYLL's minimum wage provisions.

136.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

137.    Plaintiffs and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

138.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and one-half the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

139.    As described above, Defendants are "employers" within the meaning of the FLSA, while Plaintiffs and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the FLSA.

140.    As described above, Plaintiffs and any FLSA Plaintiff who opts-into this action worked in excess of forty hours per week, yet Defendants willfully failed to compensate Plaintiffs and any FLSA Plaintiff who opts-into this action in accordance with the FLSA's overtime provisions.

141.    Plaintiffs and any FLSA Plaintiff who opts-into this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay, or one and one-half times the minimum wage rate, if greater.

142.    Plaintiffs and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the FLSA's overtime provisions.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the NYLL and the NYCRR*

143.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

144.    N.Y. Lab. Law § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay, or one and one-half times the minimum wage rate, if greater, for all hours worked exceeding forty in a workweek.

145.    Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL and the NYCRR.

146.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

147.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their regular rate of pay, or one and one-half the minimum wage rate, if greater.

148.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' violations of the NYLL's and NYCRR's overtime provisions.

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Pay Spread-of-Hours Pay in Violation of the NYCRR*

149.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

150.    N.Y. Lab. Law § 652 and 12 NYCRR § 142-2.5 provide that an employee shall receive one hour's pay at the minimum hourly wage rate for any day worked in which the spread of hours exceeds ten hours.

151.    As described above, Defendants are "employers" within the meaning of the NYLL and NYCRR, while Plaintiffs any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL and NYCRR.

152.    As also described above, Defendants failed to provide Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action with spread of hours pay when their workday exceeded ten hours from start to finish.

153.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are entitled to this extra hour of pay, at the minimum wage rate, for all days worked in excess of ten hours.

154.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' failure to pay the required spread of hours pay.

## SIXTH CLAIM FOR RELIEF AGAINST DEFNEDANTS
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

155.    Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

156.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

157.    Defendants are "employers" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL and the NYCRR.

158.    As described above, Defendants, on each payday, failed to furnish Plaintiffs and any FLSA Plaintiff who opts-into this action with accurate wage statements containing the criteria required under the NYLL.

159.    Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Notice in Violation of the NYLL*

160. Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

161. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

162. As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiffs and any FLSA Plaintiff who opts-into this action are "employees" within the meaning of the NYLL.

163. As also described above, Defendants failed to furnish Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL.

164. Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.00.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation in Violation of the FLSA for Plaintiff JUAN PABLO ALBIM ONLY*

165. Plaintiff JUAN PABLO ALBIM repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

166. FLSA § 215 (a)(3) prohibits any person from discharging or in any other manner discriminating against any employee because such employee has filed any complaint about a violation of the FLSA.

167.    As described above, Defendants are "persons" within the meaning of the FLSA, while Plaintiff JUAN PABLO ALBIM is an "employee" within the meaning of the FLSA.

168.    As also described above, Defendants retaliated against Plaintiff JUAN PABLO ALBIM after he complained about Defendants' failure to pay him his owed wages, not only by threatening him with arrest and criminal prosecution, but by Defendants affirmatively causing Plaintiff to be arrested, detained, and prosecuted in retaliation for his complaint and his refusal to continue to work for free.

169.    Pursuant to FLSA § 216 (b), Defendants are liable to Plaintiff for economic, compensatory, and punitive damages, plus reasonable attorneys' fees, costs, and liquidated damages in an amount to be determined by a jury.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation in Violation of the NYLL for Plaintiff JUAN PABLO ALBIM ONLY*

170.    Plaintiff JUAN PABLO ALBIM repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

171.    NYLL § 215 (1)(a)(ii) prohibits employers from threatening, penalizing, or in any other manner discriminating or retaliating against any employee, including threatening to subject them to criminal prosecution for complaining about a violation of the NYLL.

172.    As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiff JUAN PABLO ALBIM is an "employee" within the meaning of the NYLL.

173.    As also described above, Defendants retaliated against Plaintiff JUAN PABLO ALBIM after he complained about Defendants' failure to pay him his owed wages, not only by threatening him with arrest and criminal prosecution, but by Defendants affirmatively causing Plaintiff to be arrested, detained, and prosecuted in retaliation for his complaint and his refusal to continue to work for free.

174.    Pursuant to NYLL § 215 (1-b), Defendants are liable to Plaintiff for economic, compensatory, and punitive damages, plus reasonable attorneys' fees, costs, and liquidated damages in an amount up to the statutory cap of $20,000.00.

## TENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *False Arrest Under N.Y. State Law for Plaintiff JUAN PABLO ALBIM ONLY*

175.    Plaintiff JUAN PABLO ALBIM repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

176.    Defendant NADEL willfully, deliberately and intentionally made a false claim against Plaintiff, alleging he stole two (2) scooters, and over fifty-thousand dollars ($50,000.00) in cash from Defendants' store.

177.    In making this claim, Defendant NADEL intended for Plaintiff to be arrested and prosecuted.

178.    In making this false claim, Defendant NADEL knew that Plaintiff would, in fact, be arrested and prosecuted.

179.    Defendant NADEL actively encouraged, urged, and pressured the police to make an arrest without probable cause to believe in Plaintiff JUAN PABLO ALBIM's culpability.

180.    As a result of Defendant NADEL's actions, Plaintiff was in fact taken into custody from his home, subjected to an illegal, improper and false arrest, taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted in criminal proceedings, without probable cause privilege or consent.

181.    The aforesaid actions by the Defendant NADEL constituted a deprivation of Plaintiff's rights, privileges and/or immunities secured by the Constitution and laws of the United States of America.

182.    As a result of the foregoing, Plaintiff JUAN PABLO ALBIM was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, and was forced to incur substantial legal and other monetary expenses.

183.    As a result of the foregoing, JUAN PABLO ALBIM has been damaged in the amount to be determined by a Jury.

**ELEVENTH CLAIM FOR RELIEF AGAINST DEDENFANTS**
*Malicious Prosecution Under N.Y. State Law  for Plaintiff JUAN PABLO ALBIM ONLY*

184.    Plaintiff JUAN PABLO ALBIM repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

185.    Defendant NADEL affirmatively induced the police to arrest Plaintiff, and took an active part in the arrest.

186.    Defendant NADEL lacked probable cause to initiate criminal proceedings against Plaintiff JUAN PABLO ALBIM, and falsified evidence before the New York City Police Department and New York County District Attorney.

187.    Defendant NADEL forwarded this false evidence to police and to prosecutors in the New York County District Attorney's Office.

188.    Defendant NADEL did not make a complete and full statement of facts to the District Attorney.

189.    Defendant NADEL withheld exculpatory evidence from the District Attorney.

190.    Defendant NADEL was directly and actively involved in the initiation of criminal proceedings against Plaintiff JUAN PABLO ALBIM.

191.    Defendant NADEL acted with malice by knowingly initiating criminal proceedings based on fabricated allegations against JUAN PABLO ALBIM.

192.    Defendant NADEL was directly and actively involved in the continuation of criminal proceedings against Plaintiff JUAN PABLO ALBIM.

193.    Defendant NADEL acted with malice in continuing criminal proceedings against Plaintiff JUAN PABLO ALBIM.

194.    Defendant NADEL misrepresented and falsified evidence throughout all phases of the criminal proceedings.

195.    Notwithstanding the perjurious and fraudulent conduct of Defendant NADEL, the criminal proceedings were terminated in Plaintiff JUAN PABLO ALBIM's favor on September 21, 2022, when all charges against him were completely dismissed by the New York County District Attorney's Office.

196.    As a result of the foregoing, JUAN PABLO ALBIM was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, and was forced to incur legal and other monetary expenses.

197.    As a result of the foregoing, JUAN PABLO ALBIM has been damaged in the amount to be determined by a Jury.

**TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Malicious Abuse of Process Under N.Y. State Law for Plaintiff JUAN PABLO ALBIM*
*ONLY*

198.    Plaintiff JUAN PABLO ALBIM repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if set forth herein.

199.    Defendant NADEL issued legal process to place JUAN PABLO ALBIM under arrest.

200.    Defendant YARIN NADEL caused JUAN PABLO ALBIM to be arrested in order to obtain a collateral objective outside the legitimate ends of the legal process, specifically, to punish him for demanding his duly owed wages.

201.    Defendant YARIN NADEL acted with intent to do harm to JUAN PABLO ALBIM, without excuse or justification.

202.    As a result of the foregoing, JUAN PABLO ALBIM sustained, *inter alia*, deprivation of liberty, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his constitutional rights.

203.    As a result of the foregoing, JUAN PABLO ALBIM has been damaged in the amount to be determined by a Jury.

## DEMAND FOR A JURY TRIAL

204.    Pursuant to FRCP 38(b), Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any retaliation against Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action for participation in any form in this litigation;

d. Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e. Certification of the claims brought in this case under the NYLL as a class action pursuant to FRCP 23

f. Designation of Plaintiffs and their counsel as collective action representatives under the FRCP and FLSA;

g. All damages that Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action have sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action would have received but for Defendants' unlawful payment practices;

h. Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

i. Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiffs;

j.       Awarding Plaintiffs with a service award for their role as collective action representatives and in recognition for their dedication to the FLSA and Rule 23 Plaintiffs and their willingness to come forward as the lead Plaintiffs on behalf of the FLSA and Rule 23 Plaintiffs;

k.       Pre-judgment and post-judgment interest, as provided by law;

l.       Granting Plaintiffs, Rule 23 Plaintiffs, and any FLSA Plaintiff who opts-into this action such other and further relief as this Court finds necessary and proper;

m.       Compensatory damages to compensate Plaintiff JUAN PABLO ALBIM for his deprivation of liberty, emotional distress and out-of-pocket expenses; and

n.       Punitive damages against Defendant YARIN NADEL for his egregious conduct in filing knowingly false criminal charge against Plaintiff JUAN PABLO ALBIM.

Dated:  New York, New York
        March 6, 2023

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By:    _____

JON L. NORINSBERG
MICHAEL R. MINKOFF
MATTHEW G. ELLIAS
110 East 59th Street, Suite 3200
New York, New York 10022
Tel.: (212) 227-5700
Fax: (212) 656-1889
*Attorneys for Plaintiffs, Rule 23 Plaintiffs,*
*and FLSA Plaintiffs*