UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JUAN PABLO ALBIM and MARICELA
MARTINEZ MORAN, on behalf of themselves,
individually, and all others similarly situated,

                    Plaintiffs,

        -against-

1656 WIRELESS INC. d/b/a TOTAL BY
VERIZON f/k/a TOTAL WIRELESS, 4017
WIRELESS INC. d/b/a TOTAL BY VERIZON
a/k/a NY CELL SPOT, INC., f/k/a TOTAL
WIRELESS, NY CELL SPOT, INC.,
NY MOBILAI INC., d/b/a TOTAL BY
VERIZON f/k/a TOTAL WIRELESS,
GC WIRELESS SOLUTIONS INC.,
WIRELESS POINT INC., and YARIN NADEL,
individually,

                    Defendants.
----------------------------------------------------------X

REPORT AND
RECOMMENDATION
23 CV 1732 (DG)(RML)

LEVY, United States Magistrate Judge:

        By order dated November 18, 2024, the Honorable Diane Gujarati, United States

District Judge, referred plaintiffs' motion for default judgment to me for report and

recommendation.  For the reasons set forth below, I respectfully recommend that plaintiffs'

motion be granted.

## BACKGROUND

        Plaintiffs Juan Pablo Albim ("Albim") and Maricela Martinez Moran ("Moran")

(together "plaintiffs") initiated this putative collective and class action against defendants 1656

Wireless Inc. d/b/a Total By Verizon f/k/a Total Wireless ("1656 Wireless"), 4017 Wireless Inc.

d/b/a Total By Verizon a/k/a NY Cell Spot Inc. f/k/a Total Wireless ("4017 Wireless"), NY Cell

Spot Inc. ("Cell Spot"), NY Mobilai Inc. d/b/a Total By Verizon f/k/a Total Wireless

("Mobilai"), GC Wireless Solutions Inc. ("GC"), Wireless Point Inc. ("Wireless Point") and

Yarin Nadel ("Nadel") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL"). (Complaint, filed Mar. 6, 2023 ("Compl."), Dkt. No. 1.)  Plaintiffs settled with 1656 Wireless, and the Clerk of the Court entered judgment against it pursuant to Federal Rule of Civil Procedure 68 on May 29, 2024.  (Clerk's Judgment, dated May 29, 2024, Dkt. No. 44.) Plaintiffs voluntarily dismissed Nadel on July 5, 2024.  (Notice of Voluntary Dismissal, dated July 15, 2024, Dkt. No. 51.)  Plaintiffs now move for default judgment against the remaining defendants: 4017 Wireless, Cell Spot, Mobilai, GC, and Wireless Point (collectively, "defendants").  (Motion for Default Judgment, filed Nov. 8, 2024 ("Pls.' Mot."), Dkt. No 53.) The following facts, as drawn from plaintiffs' complaint and affidavits, are accepted as true for the purposes of this motion.  (Compl.; Declaration of Michael R. Minkoff, Esq., sworn to Nov. 8, 2024 ("Minkoff Decl."), Dkt. No. 55; Declaration of Juan Pablo Albim, sworn to July 10, 2024 ("Albim Decl."), Dkt. No. 56; Declaration of Maricela Martinez Moran, sworn to July 12, 2024 ("Moran Decl."), Dkt. No. 57.)

## I.    Factual Background

Defendants are domestic corporations that operate wireless and cell phone service retail stores throughout Queens, New York.  (Compl. ¶¶ 3, 18.)  They are all owned and managed by Nadel, (id. ¶ 26), and their principal places of business are as follows:

- 4017 Wireless: 40-17 Junction Boulevard, Corona, New York (id. ¶ 20)
- Cell Spot: 103-13 Roosevelt Avenue, Corona, New York (id. ¶ 22)
- Mobilai: 40-04 Warren Street, Elmhurst, New York (id. ¶ 23)
- GC: 104-02 Roosevelt Avenue, Corona, New York (id. ¶ 24)
- Wireless Point: 91-20B 59th Avenue, Elmhurst, New York (id. ¶ 25)

### A.    Albim

Plaintiff Albim worked for defendants from August 3, 2020 until June 16, 2022. (Albim Decl. ¶ 4; Compl. ¶¶ 50, 86.)  Nadel hired Albim as a store manager.  (Id.)  Despite his

title, Albim's primary duties involved selling merchandise and interfacing with customers at defendants' various retail stores.  (Albim Decl. ¶¶ 12, 22; Compl. ¶¶ 51, 57.)  Albim was required to wear a company uniform, could not negotiate his pay, and was denied the right to refuse any task Nadel assigned to him under threat of termination.  (Albim Decl. ¶ 26; Compl. ¶ 54.)  Albim worked in at least six different store locations, as determined by Nadel according to defendants' changing business needs.  (Albim Decl. ¶¶ 7–8; Compl. ¶¶ 57–61.)  These included (1) 1656 Broadway in Manhattan, (2) 40-17 Junction Boulevard in Corona, (3) 103-13 Roosevelt Avenue in Corona, (4) 40-04 Warren Street in Elmhurst, (5) 104-02 Roosevelt Avenue in Corona, and (6) 91-20B 59th Avenue in Elmhurst.  (Albim Decl. ¶ 8.)  Albim "had no independent discretion of any kind with respect to the management and operation of [d]efendants' stores . . . [and] Nadel dictated virtually every aspect of [his] work including the hours [Albim] worked, the locations of [his] work, and the manner of performing [his] work." (Compl. ¶ 55.)

Albim worked six or seven days per week for between 75 and 93.5 hours per week.  (Albim Decl. ¶¶ 17–20; Compl. ¶¶ 62–66.)  Albim was paid a flat weekly salary, regardless of the number of hours he worked.  (Compl. ¶ 70.)  Defendants paid him $924 per week from August 3, 2020 until June 6, 2021 and $1,200 per week from June 7, 2021 through May 30, 2022.  (Id. ¶¶ 68–69.)  Albim received no pay for his last three weeks of work.  (Albim Decl. ¶ 33; Compl. ¶ 81.)  When Albim complained, "Nadel became irate and berated [him]. Nadel made it clear . . . that he expected [Albim] to continue to work" despite not being paid on time.  (Albim Decl. ¶¶ 34–35.)  Defendants never provided Albim with a wage notice or wage statements.  (Id. ¶¶ 27–32; Compl. ¶¶ 75–76.)  Albim states that, had he received a wage notice and wage statements, he "would have been able to ascertain the extent of [d]efendants'

underpayment, which would have enabled him to complain about [d]efendants' failure to pay him all of his owed wages." (Compl. ¶ 78.) Furthermore, "because [d]efendants . . . failed to issue him any paystubs, . . . [Albim] suffered the consequences of underpayment." (Id. ¶ 79.)

B. Moran

Plaintiff Moran worked for defendants for eight weeks from February 1, 2022 until March 22, 2022. (Moran Decl. ¶ 4.) Like Albim, Moran was hired by Nadel as a store manager. (Id. ¶¶ 4, 7; Compl. ¶ 99.) Despite her title, Moran's primary duties were to sell merchandise and interface with customers at defendants' various retail stores. (Moran Decl. ¶ 18; Compl. ¶ 100.) Moran was required to wear a company uniform, could not negotiate her pay, and was denied the right to refuse any task Nadel assigned to her under threat of termination. (Moran Decl. ¶ 20; Compl. ¶ 103.) Nadel, on behalf of defendants, dictated all aspects of Moran's job, including when, where, and how she worked. (Moran Decl. ¶ 21; Compl. ¶ 104.) Moran reported to work, according to defendants' business needs, at four different store locations, including (1) 40-17 Junction Boulevard in Corona, (2) 103-13 Roosevelt Avenue in Corona, (3) 40-04 Warren Street in Elmhurst, and (4) 104-02 Roosevelt Avenue in Corona. (Moran Decl. ¶ 8; Compl. ¶ 106.)

Moran worked twelve hours a day six days a week for a total of 72 hours per week. (Moran Decl. ¶ 14.) Defendants paid her a flat weekly salary of $500 in cash. (Moran Decl. ¶ 13; Compl. ¶¶ 110–11.) Moran never received a wage notice or wage statements. (Moran Decl. ¶¶ 23–28; Compl. ¶¶ 115–18.) She states that, had she received a wage notice and wage statements, she "would have been able to ascertain the extent of [d]efendants' underpayment, which would have enabled her to complain about [d]efendants' failure to pay her all of her owed wages." (Compl. ¶ 119.) Furthermore, "because [d]efendants completely failed to issue her any paystubs . . . [Moran] suffered the consequences of underpayment." (Id. ¶ 120.)

## II.    Procedural Background

Plaintiffs initiated this action on March 6, 2023, alleging that defendants failed to pay minimum wages, overtime, and spread-of-hour compensation (Compl. ¶¶ 124–54) and furnish wage notices and wage statements (id. ¶¶ 155–64).[1]  Plaintiffs properly served defendants by delivering and leaving copies of the summons and complaint with the New York Secretary of State pursuant to Federal Rule of Civil Procedure 4(h)(1)(B) and New York Business Corporation Law § 306(b)(1).  (Affidavits of Service of Geoffrey Burke, sworn to Mar. 20, 2023, Dkt. Nos. 12–16.)  Defendants failed to appear or obtain counsel, and the Clerk of the Court certified their defaults on April 10, 2024.  (Entry of Default, dated Apr. 10, 2024, Dkt. No. 40.)

Plaintiffs filed their first motion for default judgment on July 12, 2024. (Plaintiffs' First Motion for Default Judgment, dated July 12, 2024, Dkt. No. 46.)  That motion was denied without prejudice to renewal for failure to comply with Local Civil Rule 55.2. (Report and Recommendation, dated Oct. 28, 2024; Order Adopting Report and Recommendation, dated Nov. 18, 2024.)  On November 8, 2024, plaintiffs filed the instant motion asking the court to enter judgment against defendants, jointly and severally, and to award plaintiffs unpaid wages, liquidated damages, statutory damages, prejudgment interest, and costs

---

[1]  Albim brought additional claims for retaliation (Compl. ¶¶ 165–74), false arrest (id. ¶¶ 175–83), malicious prosecution (id. ¶¶ 184–97), and malicious abuse of process (id. ¶¶ 198–203). None of these claims is mentioned in plaintiffs' motion for default judgment.  Accordingly, I respectfully recommend that these claims be deemed abandoned.  See Duan v. Studio M. Bar & Lounge Inc., No. 20 CV 2240, 2024 WL 4250262, at *3 n.8 (E.D.N.Y. Jan. 31, 2024) (deeming retaliation claims abandoned where plaintiff failed to address them in motion for default judgment).

and attorney's fees.  (See Pls.' Mot.; see also Memorandum in Support of Motion for Default Judgment, dated Nov. 8, 2024 ("Mem."), Dkt. No. 54.)[2]

DISCUSSION

## I.    Default Judgment Standard

Federal Rule of Civil Procedure 55 imposes "a two-step process for obtaining a default judgment."  Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011).  First, if a defendant fails to appear, plaintiffs must obtain an entry of default by the clerk of the court.  Id. (citing FED. R. CIV. P. 55(a)).  Second, once default is entered against the non-responsive defendant, plaintiffs "must apply to the court for a default judgment."  FED. R. CIV. P. 55(b)(2). Plaintiffs have satisfied these requirements.

On consideration of a motion for default judgment, the court "is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor[.]"  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."  Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 CV 4895, 2019 WL 8381264, at *5 (E.D.N.Y. Dec. 9, 2019) (citation omitted).

If the complaint suffices to establish liability, the court must "conduct an inquiry . . . to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits."

---

[2]  Although this case was initially brought as a putative class and collective action, the court understands that the entry of default judgment and damages awards are being sought only by the named plaintiffs.

Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 365 (E.D.N.Y. 2022) (quoting Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), report and recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020)); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). "When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (citation omitted).

## II.    Liability

### A.    Statute of Limitations

As a threshold matter, the court considers whether plaintiffs' claims are timely under the applicable statutes of limitations. See Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 245 (E.D.N.Y. 2024). The statute of limitations for an FLSA claim is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful,' and the three-year statute of limitations applies." Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citation omitted). The statute of limitations for NYLL claims is six years. N.Y. LAB. L. §§ 198(3), 663(3). "Both statutes start to run when the employee begins working for the employer." Jimenez, 744 F. Supp. 3d at 245 (citing Rodriguez, 2011 WL 4962397, at *2). Here, plaintiffs filed the complaint on March 6, 2023. (Compl.) Given that Albim's employment began August 3, 2020 (Albim Decl. ¶ 4), and Moran's began February 1, 2022 (Moran Decl. ¶ 4.), plaintiffs' claims are timely.

B.  FLSA

To plead a claim under the FLSA, plaintiffs must show that (1) an employer-employee relationship exists, (2) the employment falls under the FLSA's individual or enterprise coverage provisions, and (3) the employment relationship is not exempted from the FLSA. Rodriguez v. Lucky Lotto Grocery Deli Corp., No. 22 CV 2256, 2024 WL 3760583, at *7 (E.D.N.Y. July 18, 2024) (citations omitted), report and recommendation adopted sub nom. Rodriguez v. Lucky Lotto Grocer Deli Corp., 2024 WL 3759660 (E.D.N.Y. Aug. 12, 2024); Rowe v. CC Rest. & Bakery, Inc., No. 17 CV 1423, 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), report and recommendation adopted, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).

i.      Employment Relationship

The FLSA broadly defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d), (a).  "[A]n employee may be jointly employed by two or more employers," in which case such "joint employers are subject to joint and several liability for FLSA violations."  Michalow v. E. Coast Restoration & Consulting Corp., No. 09 CV 5475, 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017) (citation omitted), report and recommendation adopted, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

Plaintiffs seek to hold defendants jointly and severally liable for their unpaid wages under a single integrated enterprise theory.  (Compl. ¶¶ 20, 22–25, 27–28; Mem. at 12–15.)  To determine whether multiple entities may be considered a single employer under this theory, courts consider "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citation omitted).  The single employer determination depends on the totality of the circumstances; "not every factor need be present,

and no particular factor is controlling." Chen v. TYT E. Corp., No. 10 CV 5288, 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012) (quoting Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996)).  However, "control of labor relations is the central concern" because it reflects "the policy underlying the single employer doctrine [of] the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." Id. (citation omitted).

I find that plaintiffs have established that defendants are jointly and severally liable as a single integrated enterprise.  First, defendants shared employees, who marketed, sold, and repaired "virtually identical inventory, including cellphones, cellphone plans, and cellphone accessories."  (Compl. ¶ 28.)  Employees were "directed and required . . . to work interchangeably" at defendants' various retail stores.  (Id.)  Plaintiffs were also incentivized with bonus payments if defendants "collectively reached certain daily revenue targets[.]"  (Id.)  Therefore, defendants' operations are interrelated.  See Mangahas v. Eight Oranges Inc., 754 F. Supp. 3d 468, 486 (S.D.N.Y. 2024) ("Where [ ] nominally separate companies share employees, materials, and facilities, that tends to suggest that they form part of a single integrated enterprise."); Castillo v. Isakov, No. 22 CV 6888, 2023 WL 6664552, at *3 (S.D.N.Y. Oct. 12, 2023) ("[T]he Entity Defendants' operations are interrelated . . . [because they] shared employees, who sold Boost Mobile phone plans, cell phones, and cell phone accessories at both locations[.]"); Chica v. Shallu Constr. Corp., No. 21 CV 869, 2022 WL 970744, at *5 (E.D.N.Y. Mar. 31, 2022) ("[P]laintiffs have sufficiently pleaded that the operations of the various corporate defendants were interrelated: plaintiffs alleged that they performed tasks on construction sites on behalf of all three corporate defendants . . . .").

Second, defendants' owner, Nadel, exercised centralized labor control over defendants' retail stores.  Nadel visited and worked at each of defendants' retail stores, exercised the power to hire and fire employees, supervised and controlled employee work schedules and their conditions of employment, provided all equipment and materials necessary for employees to perform their jobs, and determined employees' rates and methods of compensation.  (Compl. ¶¶ 26–28.) See Cuaya v. VI Dev. Grp., LLC, No. 19 CV 4290, 2020 WL 5494371, at *8 (S.D.N.Y. Sept. 10, 2020) (centralized control found where defendant allegedly exercised the power and delegated to managers and supervisors the power to hire and fire employees).  Finally, plaintiffs allege that defendants are owned and managed by the same individual, Nadel.  (Compl. ¶¶ 26–28.)  Plaintiffs have therefore alleged facts sufficient to establish common management and common ownership.  See Mangahas, 754 F. Supp. 3d at 487; Chicas v. Kelco Constr., Inc., No. 21 CV 9014, 2023 WL 5016457, at *4 (S.D.N.Y. July 25, 2023), report and recommendation adopted, 2023 WL 5278515 (S.D.N.Y. Aug. 16, 2023) (finding entities with a common manager and owner constituted single integrated enterprise).  Accordingly, I find that defendants constitute a single employer integrated enterprise and that plaintiffs were employed by the enterprise.  See Lucky Lotto, 2024 WL 3760583, at *8.

  ii. Interstate Commerce

The court next considers whether plaintiffs' employment falls under the FLSA's individual or enterprise coverage provisions.  "[T]he minimum-wage and overtime provisions of FLSA apply only to employees (1) who are personally 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an enterprise engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')."  Shim v. Millennium Grp., No. 08

CV 4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)).  To properly plead enterprise coverage, plaintiffs must demonstrate that their employer has (1) an annual gross sales volume of at least $500,000 and (2) two or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.  29 U.S.C. § 203(s)(1)(A).

Plaintiffs allege that defendants had annual revenue in excess of $500,000[3] and "engaged in interstate commerce" such that they offered "cell phone plans, cell phones, consumer electronics, and accessories to customers across the United States, accepted checks and credit card payments as . . . payment based on banking agreements with out-of-state companies, and purchased and used . . . supplies that traveled across state lines . . . in the course of providing [ ] services." (Compl. ¶ 27.)  Plaintiffs' allegations are sufficient to conclude that defendants are an "enterprise engaged in commerce."  Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc., No. 14 CV 5269, 2016 WL 5092588, at *15 (E.D.N.Y. Sept. 19, 2016) ("[T]he test to be an enterprise engaged in commerce is met so long as a defendant's employees merely handled equipment or supplies that originated out-of-state." (citation modified)).  Accordingly, I find that plaintiffs' employment is covered under the FLSA.

iii.    Exemptions

Finally, plaintiffs must show that they are not otherwise exempt from the FLSA's protections.  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015).  "Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement[,]"

---

[3]  Because I find that defendants constitute a single integrated enterprise, "their gross annual sales may be combined to determine whether they satisfy the $500,000 enterprise-coverage threshold."  Yu Wei Cao v. Miyama, Inc., No. 15 CV 266, 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019).

Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), aff'd sub nom. Chen v. Major League Baseball Props., Inc., 798 F.3d 72 (2d Cir. 2015), "including if an individual is 'employed in a *bona fide* executive, administrative, or professional capacity,'" Chavez v. Roosevelt Tropical Corp., No. 23 CV 2413, 2024 WL 4244087, at *6 (E.D.N.Y. Aug. 21, 2024), report and recommendation adopted, 2024 WL 4242218 (E.D.N.Y. Sept. 18, 2024) (quoting 29 U.S.C. § 213(a)(1)).  "FLSA exemptions are to be construed narrowly."  Gonzalez v. Emp. Sols. Staffing Grp., LLC, No. 19 CV 127, 2024 WL 5399228, at *8 (E.D.N.Y. Mar. 11, 2024) (citations omitted).  In the event of a default, a court may draw reasonable inferences and resolve factual shortcomings in favor of the plaintiff.  Id.

      Although Albim and Moran were both hired as "store managers,"  (Compl. ¶¶ 50, 99), their actual duties—selling merchandise and "dealing with customers"—required neither discretion nor independent judgment, (Albim Decl. ¶¶ 22, 26; Moran Decl. ¶ 18, 21).  Because "an employee's exempt status depends less on his [or her] title, and more on the actual duties performed,"  Chavez, 2024 WL 4244087, at *6 (internal quotation marks and citation omitted), I find that plaintiffs are non-exempt employees under the FLSA.  See Sevilla v. House of Salads One LLC, No. 20 CV 6072, 2022 WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022) (despite the title of "kitchen manager," plaintiff was not FLSA-exempt).

    C.  NYLL

      To prevail on their state law claims, plaintiffs must prove that they are "employees" and that defendants are "employers" as defined by NYLL.  Mahoney v. Amekk Corp., No. 14 CV 4131, 2016 WL 6585810, at *7 (E.D.N.Y. Sept. 30, 2016), report and recommendation adopted, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," N.Y. LAB. L. § 190(3), and an

employee as "any person employed for hire by an employer in any employment," id. § 190(2). Because the FLSA and NYLL definitions are nearly identical, "[d]istrict courts in this Circuit have interpreted the definition of employer under [NYLL] coextensively with the definition used by the FLSA." Teri v. Spinelli, 980 F. Supp. 2d 366, 373 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). "NYLL also permits liability under the 'single employer' doctrine." Coley v. Vannguard Urb. Improvement Ass'n, Inc., No. 12 CV 5565, 2018 WL 1513628, at *4 (E.D.N.Y. Mar. 27, 2018). Therefore, for the same reasons discussed above, the court finds that defendants qualify as plaintiffs' employers under NYLL and that plaintiffs are entitled to the law's protections.

> D.  Violations of the FLSA and NYLL

Plaintiffs argue that they are entitled to default judgment for defendants' failure to pay Moran a minimum wage, overtime, and spread of hours pay and for their failure to pay Albim overtime and regular wages for his last three weeks of work. (Mem. at 15–19.) They further argue that defendants are liable for failing to furnish plaintiffs with wage notices or wage statements. (Id. at 19–21.) I will address each claim in turn.

> i.  Unpaid Minimum Wages (Moran)

Moran alleges that defendants paid her less than the minimum wage. (Compl. ¶¶ 112, 124–36; Mem. at 18–19.) Both the FLSA and NYLL require employers to pay their employees at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y. Lab. L. § 652. "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (citations omitted), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). Under New York law, the minimum wage at all relevant times was $15. N.Y.

L<small>AB</small>. L. § 652(1)(a).[4]  Moran worked 72 hours per week for $500, resulting in a regularly hourly

rate of $6.94 per hour, which is $8.06 less than the state minimum wage.[5]  Accordingly,

defendants are liable for failure to pay Moran minimum wages.

    ii.    <u>Unpaid Regular Wages (Albim)</u>

    Albim alleges that defendants failed to pay him any wages for his final three

weeks of work in violation of NYLL § 191(1)(d).  (Compl. ¶ 81; Mem. at 22.)  "The 'frequency

of payments' provision of NYLL requires employers to make regular payment of wages to

employees."  <u>Wing Kwong Ho v. Target Constr. of NY, Corp.</u>, No. 08 CV 4750, 2011 WL

1131510, at *14 (E.D.N.Y. Mar. 28, 2011) (quoting N.Y. L<small>AB</small>. L. § 191).  The statute provides in

relevant part that "[a] clerical and other worker shall be paid the wages earned in accordance

with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay

days designated in advance by the employer."  N.Y. L<small>AB</small>. L. § 191(1)(d).  Further, if employment

is terminated, the statute requires an employer to "pay the wages not later than the regular pay

day for the pay period during which the termination occurred."  <u>Id.</u> § 191(3).  "An employer's

failure to timely pay its employees for their work . . . entitles the employees to sue for their

unpaid wages and related damages."  <u>Lopez-Serrano v. Rockmore</u>, 132 F. Supp. 3d 390, 404

(E.D.N.Y. 2015) (internal quotation marks omitted) (quoting N.Y. L<small>AB</small>. L. § 198(1)).

---

[4]  This is the minimum wage for both "large employers" (employers of eleven or more employees) and "small employers" (employers of ten or fewer employees).  N.Y. L<small>AB</small>. L. § 652(1)(a).  Plaintiffs do not specify defendants' number of employees.  Regardless, the minimum wage during both plaintiffs' employment was $15 for both large and small employers.

[5]  Under the non-hospitality specific provisions of NYLL, Moran's regular rate is calculated by "dividing the total hours worked during the week into the employee's total earnings."  <u>Pelico v. SD Auto. Inc.</u>, No. 21 CV 4215, 2022 WL 17820136, at *6 (E.D.N.Y. Aug. 25, 2022) (quoting 11 N.Y.C.R.R. § 142-2.16).

Albim has established that defendants failed to pay him his earned wages weekly or at least semi-monthly for his last three weeks of employment and further failed to pay his earned wages within two weeks of his termination.  (Mem. at 22; see also Compl. ¶ 81.) Accordingly, I find that Albim is entitled to recover his regular wages plus overtime for those three weeks.  See Ferreira v. Brooklyn's Constrs. & Desings Inc., No. 22 CV 3796, 2024 WL 5386542, at *12 (E.D.N.Y. Mar. 15, 2024); Wing Kwong, 2011 WL 1131510, at *14.

        iii.     Unpaid Overtime

Both plaintiffs allege that defendants failed to pay them overtime wages.  (Compl. ¶¶ 72, 112–114; Mem. at 15–18.)  Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and 12 N.Y.C.R.R. § 142-2.2). Here, Albim and Moran allege that they consistently worked between 72 and 93.5 hours per week and were never paid overtime.  (Albim Decl. ¶¶ 16–21; Moran Decl. ¶¶ 14–16.)  These allegations establish defendants' liability for failure to pay plaintiffs overtime wages under the FLSA and NYLL.  See Newman v. W. Bar & Lounge, Inc., No. 20 CV 1141, 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (finding defendants liable for overtime violations of the FLSA and NYLL where plaintiff alleged "that he regularly worked sixty-two (62) hours per week while employed by defendants" and was never paid an overtime premium).

        iv.     Unpaid Spread of Hours Pay (Moran)

Moran alleges that defendants failed to pay her spread of hours wages.  (Compl. ¶ 114; Mem. at 19; Moran Decl. ¶ 17.)  New York law provides that if any employee works in excess of ten hours in a day, that employee "shall receive one hour's pay at the basic minimum

hourly wage rate, in addition to the minimum wage required. . . ." 12 N.Y.C.R.R. § 142-2.4 Moran states that she "worked shifts that exceeded ten hours from start to finish six days each week, as [she] worked twelve hours each shift." (Moran Decl. ¶ 17.) Despite consistently working twelve-hour shifts, Moran never received any spread of hours pay. (Id.) Accordingly, Moran has sufficiently established defendants' liability for failure to provide spread of hours pay under NYLL. Sevilla, 2022 WL 954740, at *6.

> v.    Failure to Furnish Wage Notices and Statements

Both plaintiffs allege that defendants failed to provide them with wage notices when they were hired and failed to furnish them with weekly wage statements in violation of the New York Wage Theft Protection Act (the "WTPA"). (Compl. ¶¶ 75–76, 115–16; Mem. at 19–21.) The WTPA requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements each time wages are paid. N.Y. LAB. L. §§ 195(1)(a), 195(3). Section 195(1) requires an employer to provide employees a written notice at the time of hiring, containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . allowances." Id. § 195(1)(a). Section 195(3) requires an employer to provide employees with certain wage statement information "with every payment of wages." Id. § 195(3). Failure to comply with either section of the law renders employers liable for damages for each instance that the violations occurred or continued to occur. Id. § 198(1-b) (stating that damages for wage notice violations under § 195(1) accumulate at rate of $50 per day, but not to exceed $5,000); § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at rate of $250 per day but may not exceed $5,000).

Plaintiffs must establish standing to maintain these claims.  See Guthrie v. Rainbow Fencing Inc., No. 21 CV 5929, 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("[C]ourts in this Circuit have found allegations of technical violations of New York Labor Laws wage notice and statement requirements to be insufficient, on their own, to confer Article III standing.") (internal quotation marks and citations omitted), report and recommendation adopted as modified, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), aff'd, 113 F.4th 300 (2d Cir. 2024). "For an informational injury resulting from the failure to receive required information to give rise to standing, a plaintiff must allege downstream consequences resulting from the failure to receive the information that demonstrate an interest in using the information beyond bringing [the] lawsuit."  Pinzon v. 467 Star Deli Inc., No. 22 CV 6864, 2023 WL 5337617, at *11 (S.D.N.Y. July 31, 2023), report and recommendation adopted, 2023 WL 5334757 (S.D.N.Y. Aug. 18, 2023) (internal quotation marks omitted) (first quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 441 (2021); and then quoting Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022)).

I find that plaintiffs' allegations are sufficient to demonstrate tangible injuries resulting from defendants' statutory violations.  Plaintiffs allege that they were never provided wage notices or wage statements and therefore incorrectly assumed "that [their] salary was legally sufficient . . . ."  (Albim Decl. ¶ 29; Moran Decl. ¶ 25.)  "As a result, [plaintiffs] did not become aware that . . . [d]efendants were underpaying [them] each week . . . ."  (Id.)  Had defendants "provided [plaintiffs] with paystubs that accurately reflected [their] actual hours worked and . . . actual pay rate, [plaintiffs] would have been able to ascertain the extent of . . . [d]efendants' underpayment, which would have enabled [them] to complain about . . . [d]efendants' failure to timely pay [their] owed wages."  (Albim Decl. ¶ 30; Moran Decl. ¶ 26.)

Because defendants "completely failed to issue [plaintiffs] any paystubs, . . . [plaintiffs] suffered the consequences of underpayment." (Albim Decl. ¶ 31; Moran Decl. ¶ 27.) In other words, defendants' failure to provide plaintiffs with information about their wages resulted in their underpayment. This is sufficient to demonstrate a tangible injury resulting from defendants' violations. See Solis v. Tropical Rest. Bar Inc., No. 23 CV 1707, 2024 WL 4271234, at *13 (E.D.N.Y. Sept. 19, 2024) ("Plaintiff sufficiently establishes Article III standing when he alleges that the denial of the statutory right to wage notices and wage statements ultimately resulted in underpayment."). Accordingly, I respectfully recommend that defendants be found liable for their violations of NYLL's wage notice and wage statement provisions.

## III.    Damages

### A. Compensatory and Liquidated Damages

#### i.    Unpaid Minimum Wages (Moran)

As discussed above, Moran's regular pay rate was $6.94 per hour ($500/72 hours). See Pelico v. SD Auto. Inc., No. 21 CV 4215, 2022 WL 17820136, at *6 (E.D.N.Y. Aug. 25, 2022) (quoting 11 N.Y.C.R.R. § 142-2.16) ("Under the non-hospitality specific provisions of the NYLL, plaintiff's regular rate is calculated by 'dividing the total hours worked during the week into the employee's total earnings.'"). Her minimum wage damages are calculated by taking the difference between her regular rate of pay ($6.94) and the New York City minimum wage ($15), multiplied by the number of non-overtime hours that she worked. Sanchez, 643 F. Supp. 3d at 376. Accordingly, I respectfully recommend that Moran be awarded $2,579.20 in unpaid minimum wages ($8.06 x 40 non-overtime hours x 8 weeks).[6]

---

[6] Plaintiffs calculate Moran's minimum wage damages as $8,640. (Minkoff Decl., Ex. A.) The court presumes that plaintiffs improperly multiplied the hourly minimum wage ($15) by Moran's

Continued . . .

ii.    Unpaid Regular Wages (Albim)

Albim was not compensated at all for his last three weeks of employment. (Compl. ¶ 81.)  Under Article 6 of the NYLL, Albim is entitled to receive the flat rate of $1,200 per week for the three weeks that he worked without pay.  See Ferreira, 2024 WL 5386542, at *14.  Accordingly, I recommend that Albim be awarded $3,600 in unpaid wages ($1,200 x 3 weeks).[7]

iii.    Unpaid Overtime

"Under both the FLSA and NYLL, an employee is entitled to overtime pay, calculated at one and one-half times the employee's regular hourly rate, for hours worked in excess of 40 in one work week."  Ferreira, 2024 WL 5386542, at *12 (citations omitted); 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142-2.2.  "Accordingly, for hours worked over 40 each week, plaintiff[s] [are] owed the difference between the proper overtime rate and [their] regular rate." Pelico, 2022 WL 17820136, at *7.  "Under the non-hospitality specific provisions of the NYLL, plaintiff's regular rate is calculated by 'dividing the total hours worked during the week into the employee's total earnings.'"  Id. at *6 (quoting 11 N.Y.C.R.R. § 142-2.16); see also Sanchez v. Hyper Structure Corp., No. 19 CV 4524, 2023 WL 2815717, at *10 (E.D.N.Y. Feb. 24, 2023) ("[U]nder the NYLL, for non-hospitality industry workers who are paid hourly, the 'regular rate' is the regular hourly rate; if paid by salary, the regular rate is the total weekly salary divided by the number of hours worked."); Jacome v. Optical 49, Inc., No. 20 CV 2615, 2021 WL 3375134, at *11 (E.D.N.Y. July 9, 2021), report and recommendation adopted, 2021 WL 3373130

---

total hours worked (72) and then further failed to account for the wages she was paid during her employment ($500 weekly or $6.94 per hour).

[7]  Plaintiffs calculate Albim's unpaid wage damages as $2,772, presumably based on Albim's old weekly pay rate ($924 x 3 = $2,772).  (Minkoff Decl., Ex. A.)  This is incorrect because by May 2022, Albim was earning $1,200 per week.  (Compl. ¶ 69.)

(E.D.N.Y. Aug. 3, 2021) (using this method to calculate overtime where plaintiff was paid a weekly flat rate despite working over 40 hours per week); Wing Kwong Ho, 2011 WL 1131510, at *15 (same).  In the event the regular rate falls below the applicable minimum wage, an employee is entitled to compensation at a rate of 1.5 times the applicable minimum wage, which at all times relevant to this action was $15.  Sanchez, 643 F. Supp. 3d at 377.

Moran alleges that she worked 72 hours per week, which amounts to 32 hours of overtime per week.  Because the minimum wage is higher than her regular hourly pay, Moran is entitled to an hourly overtime rate of $22.50 ($15 x 1.5).  See Pelico, 2022 WL 17820136, at *8 (E.D.N.Y. Aug. 25, 2022) ("Plaintiff's overtime wage rates are calculated based on [her] regular rate of pay or the applicable minimum wage rate, whichever is greater.").  Moran's overtime damages are calculated as follows:

| Start Date | End Date | Weekly Salary | No. of Weeks | No. of Hours | Regular Rate | Overtime Rate | Difference between Regular and OT Rates | No. of OT Hours | Total OT Wages Owed |
|---|---|---|---|---|---|---|---|---|---|
| 2/1/22 | 3/22/22 | $500 | 8 | 72 | $6.94 | $22.50 | $15.56 | 32 | **$3,983.36** |

Albim alleges that he worked 77 hours per week from August 3, 2020 to December 1, 2020 (Albim Decl. ¶ 17; Minkoff Decl., Ex. A); 81.25 hours per week[8] from December 2, 2020 to June 6, 2021 (Albim Decl. ¶ 18); 87.25 hours per week[9] from June 7, 2021

---

[8]  Albim alleges that he worked "either eighty-seven and one-half (87.5) or seventy-five (75) hours each week" during this period.  (Albim Decl. ¶ 18.)  The average of 87.5 and 75 is 81.25.

[9]  Albim alleges that he worked "either ninety-three and one-half (93.5) hours or eighty-one (81) hours each week" during this period.  (Albim Decl. ¶ 19.)  The average of 93.5 and 81 is 87.25.

to October 31, 2021 (id. ¶ 19); 81.25 hours per week[10] from November 1, 2021 to January 1, 2022 (id. ¶ 18); and 75 hours per week from January 2, 2022 to June 16, 2022 (id. ¶ 20). He was paid a weekly salary of $924 per week from August 3, 2020 to June 6, 2021, and $1,200 from June 7, 2021 through the end of his employment. (Compl. ¶¶ 68–69.) Albim's overtime damages are calculated as follows:

| Start Date | End Date | Weekly Salary | No. of Weeks | No. of Hours | Regular Rate[11] | Overtime Rate | Difference between Regular and OT Rates | No. of OT Hours | OT Wages Owed |
|---|---|---|---|---|---|---|---|---|---|
| 8/3/2020 | 12/1/2020 | $924 | 17 | 77 | $12 | $22.50 | $10.50 | 37 | $6,604.50 |
| 12/2/2020 | 6/6/2021 | $924 | 26 | 81.25 | $11.37 | $22.50 | $11.13 | 41.25 | $11,936.93 |
| 6/7/2021 | 10/31/2021 | $1,200 | 20 | 87.25 | $13.75 | $22.50 | $8.75 | 47.25 | $8,268.75 |
| 11/1/2021 | 1/1/2022 | $1,200 | 8 | 81.25 | $14.78 | $22.50 | $7.72 | 41.25 | $2,547.60 |
| 1/2/2022 | 6/16/2022 | $1,200 | 23 | 75 | $16 | $24 | $8 | 35 | $6,6440 |
| **TOTAL OT WAGES OWED** | | | | | | | | | **$35,797.78** |

iv.    Unpaid Spread of Hours Pay (Moran)

Plaintiffs seek spread of hours damages for Moran only. (Mem. at 22.) As discussed above, employees are entitled to spread of hours pay equal to "one additional hour of pay at the basic minimum hourly rate" for each day in which spread of hours exceeds ten hours. 12 N.Y.C.R.R. § 142-2.4(a). Because Moran worked more than ten hours each day, she is entitled to spread of hours pay every day she worked from February 1, 2022 through March 22,

---

[10] Albim alleges that he worked "either eighty-seven and one-half (87.5) or seventy-five (75) hours each week" during this period. (Albim Decl. ¶ 18.) The average of 87.5 and 75 is 81.25.

[11] Plaintiffs seemingly calculate Albim's regular rate of pay by dividing his weekly fixed salary by 40 hours, which is the method of calculation permitted for hospitality employees pursuant to the NYLL Hospitality Industry Wage Order. (Minkoff Decl., Ex. A.) However, the NYLL Hospitality Industry Wage Order, which applies only to restaurants and hotels, does not apply to defendants' cell phone retail stores. See Pelico, 2022 WL 17820136, at *6 n.11.

2022.  Accordingly, I respectfully recommend that Moran be awarded $720 in unpaid spread of hours pay ($15 x 6 days x 8 weeks).

       v.     <u>Liquidated Damages</u>

Plaintiffs seek liquidated damages pursuant to NYLL.  (Mem. at 23–24.)  NYLL provides for liquidated damages for wage claim violations, calculated in an amount equal to one hundred percent of the total amount of wages found to be due.  N.Y. LAB. L. §§ 198(1-a), 663(1). "If the employer shows that 'the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA or NYLL, a court may decide not to award liquidated damages."  <u>Hyper Structure Corp.</u>, 2023 WL 2815717, at *11  (quoting 29 U.S.C. § 260; and citing NYLL § 198(1-a) (granting same good-faith exception to liquidated damages)).  Because defendants did not respond to the motion, there is no showing of good faith, and liquidated damages are appropriate.  <u>Id.</u> (citing <u>Herrera v. Tri-State Kitchen & Bath, Inc.</u>, No. 14 CV 1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015)).  Accordingly, I recommend that, in addition to their respective compensatory damages, Moran be awarded $7,282.56 in liquidated damages (2,579.20 + 3,983.36 + 720); and Albim be awarded $39,997.78 in liquidated damages (3,600 + 35,797.78).

    B.  <u>Statutory Damages</u>

As previously discussed, plaintiffs are entitled to statutory damages for defendants' violations of the WTPA.  <u>See</u> N.Y. LAB. L. §§ 195(1), (3).  Employees can recover $50 for each workday that the employer was in violation of Section 195(1) (wage notice), up to a maximum of $5,000.  <u>Id.</u> § 198(1-b).  Likewise, an employee can recover $250 for each workday that the employer was in violation of Section 195(3) (wage statements), up to a maximum of $5,000.  <u>Id.</u> § 198(1-d).

Because Albim worked for defendants for over 100 days beginning in August 2020, he is entitled to the maximum $5,000 for each statutory violation, or $10,000 in total, as a penalty for defendants' violations.  Moran worked for defendants for a total of 48 workdays (6 days per week x 8 weeks).  Accordingly, she is entitled to recover the maximum $5,000 for defendants' failure to provide her with any wage statements, and $2,400 (48 days x $50) for defendants' failure to provide her with a wage notice.[12]

C.  Prejudgment Interest

Plaintiffs also seek prejudgment interest.  (Mem. at 24–27.)  "Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does."  Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 123–24 (E.D.N.Y. 2023) (citing Fermin, 93 F. Supp. 3d at 48).  "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law."  Fermin, 93 F. Supp. 3d at 49 (internal quotation marks, citations and alterations omitted).  The rate of interest is calculated at nine percent per annum, N.Y.C.P.L.R. § 5004, and where damages were incurred at various times, may be computed from a single reasonable intermediate date, id. § 5001(b).  "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered."  Sanchez, 643 F. Supp. 3d at 380 (citation omitted).

---

[12]  Plaintiffs misstate Section 198(1-b) as awarding $100 per workday and therefore argue that Moran is entitled to $4,800 for defendants' failure to issue her a proper wage notice under NYLL § 195(1).  (Mem. at 23.)  This is incorrect.  N.Y. LAB. L. § 198(1-b) ("If any employee is not provided within ten business days of his or her first day of employment a notice as required by [Section 195(1)], he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.").

The midpoint of Albin's employment dates (August 3, 2020 to June 16, 2022) is approximately July 10, 2021. Accordingly, the court respectfully recommends that prejudgment interest be awarded on Albim's compensatory damages from July 10, 2021, to the date judgment is entered, at a per diem interest rate of $9.86 (($39,997.78 x .09)/365).

The midpoint of Moran's employment dates (February 1, 2022 to March 22, 2022) is approximately February 25, 2022. Accordingly, the court respectfully recommends that prejudgment interest be awarded on Moran's compensatory damages from February 25, 2022, to the date judgment is entered, at a per diem interest rate of $1.80 (($7,282.56 x .09)/365).

D. Post-Judgment Interest

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The Second Circuit has held that post-judgment interest is mandatory on all awards in civil cases as of the date judgment is entered. Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996). Accordingly, I respectfully recommend that defendants be ordered to pay plaintiffs post-judgment interest, to be calculated from the date the Clerk of the Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961. Fermin, 93 F. Supp. 3d at 53.

## IV. Attorney's Fees and Costs

Last, plaintiffs seek an award of $28,815 in attorney's fees and $1,736.11 in costs incurred in connection with this action, pursuant to the FLSA, 29 U.S.C. § 216(b) and NYLL §§ 198(f), 663(1). (Mem. at 28–33; Minkoff Decl. ¶¶ 40–42, Exs. B, C.)

A. Fees

As the prevailing party in this action, plaintiffs are entitled to an award of "reasonable" attorney's fees under the FLSA and NYLL. 29 U.S.C. § 216(b); N.Y. LAB. L. §

198(1-a).  "District courts have broad discretion to determine the amount of attorney's fees awarded, and the party requesting fees must submit documentation to support its request."  Perry v. High Level Dev. Contracting & Sec. LLC, No. 12 CV 2180, 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), report and recommendation adopted, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

      i.    Hourly Rate

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Hennessy v. 194 Bedford Ave Rest. Corp., No. 21 CV 5434, 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) (internal quotation marks and citations omitted), report and recommendation adopted, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022).  "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Id. (citation modified).  "The applicant bears the burden to demonstrate reasonableness."  Sadowski v. Yeshiva World News, LLC, No. 21 CV 7207, 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), report and recommendation adopted, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

"Courts in the Eastern District of New York have recently awarded hourly rates from $70 to $100 for legal support, $100 to $200 for junior associates, $200 to $325 for senior associates, and $300 to $450 for partners in FLSA cases."  Rodriguez v. MRC Bakery Corp., No. 24 CV 4570, 2025 WL 2429794, at *23 (E.D.N.Y. Aug. 24, 2025) (internal quotation marks and citation omitted).  Here, plaintiffs seek to recover attorney's fees at an hourly rate of $500 for work performed by Jon Norinsberg; $450 for worked performed by Michael R. Minkoff, and $150 for work performed by Luiggi Tapia.  (Minkoff Decl., Ex. B.)

Because of the relatively straightforward nature of plaintiffs' wage and hour claims, I find the proposed hourly rates to be unreasonable. First the court recommends an hourly rate of $400 for Mr. Norinsberg. See Chavez, 2024 WL 4244087, at *13 (reducing Mr. Norinsberg's rate from $450 to $350). Mr. Norinsberg is a managing partner at Joseph & Norinsberg, LLC and "has been litigating civil rights and employment cases for over thirty years." (Minkoff Decl. ¶ 46.) Due to his experience and the relative simplicity of this case, I find that $400 per hour is a reasonable rate. MRC Bakery Corp., 2025 WL 2429794, at *23 (awarding $400 hourly rate to managing partner with thirty years of litigation experience); Shum v. JILI Inc., No. 17 CV 600, 2023 WL 2632497, at *4 (E.D.N.Y. Mar. 23, 2023) (finding $400 per hour to be a reasonable hourly rate for experienced attorneys in connection with FLSA default in the Eastern District); Godwin v. Buka New York Corp., No. 20 CV 969, 2021 WL 612336, at *13 (E.D.N.Y. Feb. 17, 2021) (same).

For similar reasons I recommend an hourly rate of $350 for Mr. Minkoff. In his declaration, Mr. Minkoff states first that he is "another partner" at Joseph & Norinsberg, LLC (Minkoff Decl. ¶ 58), but also, that he has "worked as the lead *associate* on this matter since its inception and ha[s] continued to serve in that role to the present." (Id. ¶ 61 (emphasis added).) Regardless of his title, Mr. Minkoff states that he graduated from law school in 2013 and joined Joseph & Norinsberg, LLC in 2021. (Id. ¶¶ 59–60.) Considering his experience and the nature of this routine FLSA case, I find that $350 per hour is a reasonable rate for Mr. Minkoff. See Castillo v. Hollis Delicatessen Corp., No. 22 CV 5476, 2024 WL 4111108, at *10 (E.D.N.Y. Aug. 22, 2024), report and recommendation adopted, 2024 WL 4107258 (E.D.N.Y. Sept. 6, 2024) (awarding $350 hourly rate for managing partner in straightforward FLSA case); Kliger v. Liberty Saverite Supermarket Inc., No. 17 CV 2520, 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 7,

26

2018), report and recommendation adopted, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (reducing hourly rate of attorney with over twenty years of experience from $450 to $350 because of "the nature and complexity of the action").

Finally, plaintiffs seek an hourly rate of $150 for Mr. Tapia.  (Minkoff Decl. ¶ 66.)  Mr. Tapia has worked as a paralegal since 2011.  (Id. ¶ 64.)  He is bilingual and served as an interpreter and translator between Moran and counsel.  (Id.)  A typical rate for paralegals in this district is $70 to $100 per hour.  Sevilla, 2022 WL 954740, at *12 (citing Castiblanco v. Don Alex Peru, No. 20 CV 2235, 2021 WL 4755701, at *9 (E.D.N.Y. Aug. 20, 2021) (collecting cases)).  However, courts have found an hourly rate of $125 reasonable for legal support staff who perform language interpretation services.  Aponte v. 5th Ave. Kings Fruit & Vegetables Corp., No. 20 CV 5625, 2022 WL 17718551, at *6–7 (E.D.N.Y. Dec. 15, 2022) (finding $125 per hour reasonable for paralegal who "served as a Spanish interpreter between plaintiff and counsel" and had "close to 30 years of experience"); Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (approving $125 hourly rate for paralegals in light of relevant language skills).  Accordingly, I respectfully recommend reducing Mr. Tapia's requested rate from $150 to $125 per hour.  To summarize, I respectfully recommend hourly rates of $400 for Jon Norinsberg; $350 for Michael R. Minkoff; and $125 for Luiggi Tapia.

   ii. Reasonable Number of Hours

"The next step in awarding attorney's fees is determining the reasonableness of the number of hours expended by counsel."  Martinez v. New 168 Supermarket LLC, 19 CV 4526, 2020 WL 5260579, at *9 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, 2020 WL 5259056 (Sept. 3, 2020).  "In reviewing a fee application, the court should exclude

'excessive, redundant, or otherwise unnecessary' hours." Id. (quoting Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009)). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." Perry, 2022 WL 1018791, at *14 (citation modified). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." Id. (internal quotation marks and citations omitted).

Here, plaintiffs request fees for a total of 70.2 hours. (Minkoff Decl. ¶ 40.) This amount strikes the court as excessive given the routine nature of plaintiffs' claims and the likelihood that plaintiffs' counsel has filed numerous similar default judgment motions. Martinez, 2020 WL 5260579, at *9 (finding 28.7 hours excessive and recommending ten percent fee reduction); Kliger, 2018 WL 4782342, at *10 (finding 86.9 hours excessive for similar case and reducing fees by thirty percent). Thus, a fifteen percent reduction in hours is warranted, reducing total hours to 59.66. Accordingly, I respectfully recommend that plaintiffs be awarded $19,391 in attorney's fees.[13]

B. Costs

In addition to attorney's fees, the prevailing party is entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorney and ordinarily charged to then clients." Cao v. Wedding in Paris LLC, 727 F. Supp. 3d 239, 301 (E.D.N.Y. 2024) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)). To recover such costs, "[p]laintiffs are required to submit adequate documentary evidence in support." Id. (internal quotation marks and citation omitted).

---

[13] 8.9 hours for Norinsberg at $400 per hour ($3,560); 42.16 hours for Minkoff at $350 per hour ($14,756); and 8.6 hours for Tapia at $125 per hour ($1,075).

Plaintiffs request $1,736.11 in costs, made up of the $402 filing fee plus $1,086 for "Meridien Investigations – Service of Process," $48.36 for "LetterStream – Postage," and $199.75 for "Accredited Language – Translation." (Minkoff Decl., Ex. C.) Plaintiffs do not, however, substantiate these requests with any documentation aside from a list of expenditures. (Id.) "[I]n the absence of supporting documentation as to any further costs, only [$402] is recoverable." Baltierra v. Advantage Pest Control Co., No. 14 CV 5917, 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015); see also Chavez, 2024 WL 4244087, at *14 (awarding plaintiff the $402 filing fee after taking judicial notice of it); Cao, 727 F. Supp. 3d at 301 (same). Accordingly, I respectfully recommend that plaintiffs be awarded $402 in costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs' motion be granted and that default judgments be entered against defendants jointly and severally. Regarding damages, I respectfully recommend that plaintiffs be awarded a total of $110,760.68, as follows:

|       | Unpaid Wages | Liquidated Damages | Statutory Damages | Total       |
| ----- | ------------ | ------------------ | ----------------- | ----------- |
| Albim | $39,397.78   | $39,397.78         | $10,000           | $88,795.56  |
| Moran | $7,282.56    | $7,282.56          | $7,400            | $21,965.12  |

I further recommend that prejudgment interest be awarded on Albim's unpaid wages of $39,397.78 from July 10, 2021 to the date of entry of judgment at a per diem interest rate of $9.86; and on Moran's unpaid wages of $7,282.56 from February 25, 2022 to the date of entry of judgment at a per diem interest rate of $1.80. I also recommend that post-judgment interest be awarded to both plaintiffs at the rate set forth in 28 U.S.C. § 1961(a). Finally, I recommend that plaintiffs be awarded $19,391 in attorney's fees and $402 in costs.

Plaintiffs are directed to serve a copy of this Report and Recommendation on defendants, and to file proof of service with the court within ten (10) days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically within fourteen (14) days.  Failure to file objections within the specified time may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_Robert M. Levy_
ROBERT M. LEVY
United States Magistrate Judge

Dated:  Brooklyn, New York
        September 8, 2025